IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CAROLYN STANPHILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-06-985-BA |
| | ) | |
| HEALTH CARE SERVICE CORP., | ) | |
| d/b/a BLUECROSS BLUESHIELD | ) | |
| OF OKLAHOMA, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

The Court grants the Plaintiff's motion for sanctions.

The Plaintiff asked for documents in October 2006 and the Defendant waited until December 2007 to produce six sets of handwritten notes which were responsive to the requests.[1] These notes apparently support the Plaintiff's claim that she had been terminated in part based on her age.  By the time that the Plaintiff could question the pertinent employees, their memories about the documents had understandably faded.  The Defendant does not challenge the Plaintiff's arguments that the documents had fallen within the scope of the requests and that the document production should have been supplemented much earlier.  The only questions are whether the delay in supplementation requires sanctions and, if so, what they should entail.  Sanctions are appropriate under Federal Rule of Civil

---

[1]     At the same time, the Defendant produced other responsive documents.  But the present motion involves only the delay in production of six sets of handwritten notes.

Procedure 37(c) and will include monetary reimbursement and the issuance of a jury instruction on permissible inferences from the delay in supplementation.

<u>Authorization for Sanctions</u>

In the motion, the Plaintiff seeks sanctions based on the doctrine of spoliation and Federal Rule of Civil Procedure 37(c).  As the Defendant argues, the principle of spoliation does not apply.[2]  But Rule 37(c) does.[3]

When the Defendant incurred the duty to furnish the documents currently designated as "Plaintiff's Exhibits 84, 86,[4] 88, 89, 90, and 91," Federal Rule of Civil Procedure 37(c)(1)[5] stated:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response

---

[2]     *See Burlington Northern and Santa Fe Railway Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (stating that spoliation sanctions are proper when certain elements are present, including prejudice from "the destruction of the evidence" (citation omitted)).

[3]     Similar circumstances arose in *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002).  There a party was late in producing e-mails.  *See Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d at 101-106.  The federal appeals court held that the doctrine of spoliation did not apply because the culpable party had not destroyed the documents.  *Id.* at 106. Instead, the appellate court held that Federal Rule of Civil Procedure 37 applied.  *Id.*; *see infra* pp. 5-6.

[4]     In the motion for sanctions, the Plaintiff refers to Exhibit 87 rather than Exhibit 86. Plaintiff's Motion for Costs and Affirmative Relief Based on Discovery Violations with Authority at p. 2 (Jan. 11, 2008); Plaintiff's Reply in Support of Her Motion for Costs and Affirmative Relief Based on Discovery Violations at pp. 2, 8 (Feb. 8, 2008).  But the Plaintiff's description of the document fits Exhibit 86 rather than Exhibit 87.

[5]     The Court must apply the version of Rule 37(c)(1) in effect when the documents were to be produced.  *See Toth v. Grand Trunk Railroad*, 306 F.3d 335, 343 n.2 (6th Cir. 2002), *modified on other grounds*, *Robers v. Galen of Virginia, Inc.*, 325 F.3d 776, 787 n.3 (6th Cir. 2003).

to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.  In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.  In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

<u>Duty to Timely Supplement the Document Production</u>

Under this rule, the initial issue is whether the Defendant should have supplemented the document production with Exhibits 84, 86, 88, 89, 90, and 91 prior to December 2007. During the pertinent time-period, the Defendant had a duty to "seasonably" amend its document production upon learning that its initial response was materially incomplete or incorrect.  *See* Fed. R. Civ. P. 26(e)(2) (with amendments to May 21, 2007); *see also supra* note 5.[6]  Thus, the Court must determine the materiality of the delay in production of Plaintiff's Exhibits 84, 86, 88, 89, 90, and 91.  The Defendant does not question the

---

[6]     Prior to December 1, 2007, Federal Rule of Civil Procedure 26(e) required supplementation of information "thereafter acquired if ordered by the court" or in other circumstances, such as those referenced in the text.  The phrase "thereafter acquired" was deleted effective December 1, 2007. The advisory committee notes explained that the phrase had not been intended to limit the duty of supplementation:

> Rule 26(e) stated the duty to supplement or correct a disclosure . . . "to include information thereafter acquired."  This apparent limit is not reflected in practice; parties recognize the duty to supplement or correct by providing information that was not originally provided although it was available at the time of the initial disclosure or response.  These words are deleted to reflect the actual meaning of the present rule.

Fed. R. Civ. P. 26(e) advisory committee notes - 2007 amendment.

materiality of the documents or the duty to supplement the production with the handwritten notes.

Culpability

Instead, the Defendant contends in part that sanctions are inappropriate because it had acted unintentionally and in good faith once it recognized the failure to produce the handwritten notes. Defendant's Response to Plaintiff's Motion for Costs and Affirmative Relief Based on Discovery Violations at pp. 2, 6 (Feb. 1, 2008). In defense of its conduct, Health Care Service Corp. states that it has cooperated with the Plaintiff by furnishing over 4000 pages, scheduling depositions of its employees, and consenting to the filing of a supplemental summary judgment brief. *Id*. at pp. 2-3, 11. The Defendant's argument is misguided, legally and factually. Culpability is not necessary for sanctions, and the Defendant has still not explained why the handwritten notes were not produced until December 2007.

"Rule 37 has no bad faith requirement,"[7] and the Defendant's argument about culpability is invalid because it stems from an internally inconsistent combination of contentions. In part, the Defendant argues that the spoliation doctrine is inapplicable because it involves only the destruction of relevant documents. *Id*. at pp. 4-5. Elsewhere, however, the Defendant argues that culpability is a factor because it has been treated as a consideration

---

[7]     *Youn v. Track, Inc.,* 324 F.3d 409, 421 (6th Cir. 2003) (citation omitted); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) ("Since Rule 37(c)(1) by its terms does not require a showing of bad faith, we now hold that such a requirement should not be read into the Rule.").

regarding sanctions in the analysis of "a spoliation claim." *Id.* at pp. 5-6.  The arguments are inconsistent because, as the Defendant points out, the spoliation doctrine is inapplicable. *See supra* p. 2 & notes 2-3; *infra* pp. 5-6.

When considering Federal Rule of Civil Procedure 37(c) rather than the spoliation doctrine, the Tenth Circuit Court of Appeals has never regarded culpability as a requirement for sanctions[8] short of dismissal.[9]  Indeed, the governing rule authorized sanctions for failure to timely supplement a document production unless the delay was harmless or substantially justified.  Fed. R. Civ. P. 37(c)(1) (with amendments to May 21, 2007); *see infra* note 20.

A similar issue arose in *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002).  There the plaintiff failed to timely produce e-mails, and the district

---

[8]     Even for spoliation, the Tenth Circuit Court of Appeals does not require proof of bad faith before imposing sanctions other than an adverse inference. *See 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006) (upholding an order striking testimony as a sanction and explaining that the ruling did not require proof of bad faith in the destruction of the evidence). When an adverse inference is involved for spoliation, the Tenth Circuit Court of Appeals has reasoned that innocent destruction of a document would not reflect consciousness of a weak case. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) (stating that "[m]ere negligence" does not justify an adverse inference for spoliation because the loss or destruction of evidence would "not support an inference of consciousness of a weak case" (citation omitted)).  When the court instructs on an adverse inference for a delay in production, as in the instant case, consciousness of a weak case is immaterial.  Instead, the instruction would simply allow an inference from the nature of the evidence that is ultimately presented to the jury. *See infra* pp. 14-16; *cf.* Chris Sanchirico, *Evidence Tampering*, 53 Duke L.J. 1215, 1277 (2004) ("A negative inference from spoliation seems no worse than the negative inference that the evidence would have inspired had it not been destroyed and instead had been admitted into evidence." (footnote omitted)).

[9]     The Defendant refers to *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992).  Defendant's Response to Plaintiff's Motion for Costs and Affirmative Relief Based on Discovery Violations at p. 5 (Feb. 1, 2008).  There a court addressed a sanction of dismissal under Federal Rule of Civil Procedure 37(b)(2)(C), and one of the cited factors was culpability. *Ehrenhaus v. Reynolds*, 965 F.2d at 920-21.  But this factor applies only when the court considers dismissal as a sanction. *Id.*

court declined to impose sanctions in part because the delay had not involved bad faith or gross negligence.  *See Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d at 101.  The federal appeals court vacated the ruling, noting that the issue of sanctions was governed by Federal Rule of Civil Procedure 37 rather than the doctrine of spoliation.  *See supra* note 3.  The court went on to conclude that under Rule 37, "discovery sanctions, including an adverse inference instruction, may be imposed where a party has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence . . . ."  *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d at 101; *see also id.* at 113 (substantially similar statement of the holding).

Against this backdrop, the Defendant has downplayed its discovery violation, but still fails to explain why it had taken place.  As the Defendant states, it has produced thousands of pages.  *See supra* p. 4.  Such production may be commendable when the thousands of pages had been requested.[10]  But if the Defendant produced thousands of pages, one wonders why it failed to produce the handwritten notes in Martha West's desk.

Julie Clark asked Ms. West in 2006 for "any notes or records, e-mail correspondence that she had had with Carolyn [Stanphill]."  Julie Clark Deposition at pp. 13–14 (Jan. 10, 2008).  In response, Ms. West gathered the documents "[p]robably early to mid '06."  Martha

---

[10]     When they had not been, the voluminous production may be less than commendable.  *See* Linda Mullenix, *Discovery in Disarray: The Pervasive Myth of Pervasive Discovery Abuse and the Consequences for Unfounded Rulemaking*, 46 Stan. L. Rev. 1393, 1401 (1994) (describing a "common discovery abuse" involving production of "thousands of documents" to a requesting plaintiff, with "extra cost, harassment, and delay").  The Court assumes that the Defendant had acted in good faith by producing the thousands of pages.

West Deposition at pp. 14-15 (Jan. 10, 2008).  According to Ms. West, she put the notes in a folder and gave it to Julie Clark, who was responsible for investigating discrimination claims.  *Id*. at pp. 11, 15.  Thus, Ms. Clark apparently had the handwritten notes by mid-2006.  *Id.* at p. 88.  And Ms. Clark admittedly knew that the notes related to Ms. Stanphill and that she was claiming discrimination.  Julie Clark Deposition at pp. 17-18 (Jan. 10, 2008).

Ms. Clark did not furnish the documents to defense counsel until December 2007, and no one knows why.  Ms. Clark and others apparently knew to produce thousands of pages about Ms. Stanphill to defense counsel.  But after asking Ms. West for notes about Ms. Stanphill and receiving them, Ms. Clark inexplicably failed to give them to defense counsel until the passage of more than a year.

The Defendant regards the 13-month delay as "inadvertent."  Perhaps it was.  But the 13-month delay is still never explained.  Even if Ms. Clark's unexplained lapse had been inadvertent, as the Defendant represents, sanctions would remain appropriate under Federal Rule of Civil Procedure 37(c).

<u>Prejudice to the Plaintiff</u>

In opposing sanctions, the Defendant also suggests that the delay did not prejudice the Plaintiff.  Defendant's Response to Plaintiff's Motion for Costs and Affirmative Relief Based on Discovery Violations at pp. 7-8 (Feb. 1, 2008).  This suggestion is not persuasive.

The exhibits in question appear to provide considerable support for Ms. Stanphill's claim of age discrimination.  For example, in a list of hiring decisions by Julie Sloan, a handwritten note refers to "age, tenure, productivity."  Plaintiff's Exhibit 86.  Another note apparently reflects acknowledgment by one of the decision-makers, John Mavros, that employees "don't come any better" than Ms. Stanphill.  Plaintiff's Exhibit 84.  One note suggests a change in the job requirements because one of the applicants selected would not have qualified under the initial criteria.  Plaintiff's Exhibit 89.  Another note apparently reflects "heartburn" because all of the reasons given by Ms. Sloan were "subjective" and an unidentified individual[11] had not obtained an offer even though she met the "only objective measure" discussed.  Plaintiff's Exhibit 88.[12]

These notes appear on documents created in February 2006.  *See* Plaintiff's Exhibits 84, 86, 88, 89.  The Plaintiff asked for them 8 months later, and the Defendant had 30 days to produce them.  *See* Fed. R. Civ. P. 34(b) (with amendments to May 21, 2007).  At that point, the documents would have been in existence roughly 9 months.  No one knows how much Julie Sloan and John Mavros would have remembered about the documents 9 months after the fact.  The reason is that the Defendant did not disclose the documents until

---

[11]     Martha West testified that the reference would have been to either Carolyn Stanphill or Yvonne Ferguson.  Martha West Deposition at p. 56 (Jan. 10, 2008).

[12]     Martha West attributed the statements in the note to David Ruttman, who was the Vice-President of Human Resources.  Martha West Deposition at pp. 55-57 (Jan. 10, 2008).

December 2007,[13] which was roughly 22 months after the fact.  At that point, the pertinent individuals remembered little about the documents.

The prejudice is illustrated in the testimony of Julie Sloan and John Mavros once the documents were ultimately produced.

For example, the Plaintiff's counsel asked Julie Sloan about one handwritten note involving Mamie Robinette's lack of qualifications for the account consultant position under the minimum criteria announced by the Defendant.  Plaintiff's Exhibit 89.  According to the handwritten note produced in December 2007, Ms. Robinette would not qualify for the position without a change in the requirements.  *Id.*; *see* Martha West Deposition at p. 70 (Jan. 10, 2008).  When asked about the note, Martha West testified that she had talked to Julie Sloan and the latter had authorized a deviation from the job requirements to allow Mamie Robinette to qualify. Martha West Deposition at p. 76 (Jan. 10, 2008).  Ms. Sloan later stated in her deposition that she did not recall the discussion or the change in job requirements,[14] which was understandable in light of the passage of approximately 14 months since the document should have been produced.

---

[13]    The Plaintiff states that she received the additional documents on December 26, 2007. Plaintiff's Motion for Costs and Affirmative Relief Based on Discovery Violations with Authority at pp. 2, 14 (Jan. 11, 2008).  The Defendant represents that it produced the documents on December 21, 2007.  Defendant's Response to Plaintiff's Motion for Costs and Affirmative Relief Based on Discovery Violations at p. 3 (Feb. 1, 2008).  The discrepancy is immaterial to the outcome.

[14]    Julie Sloan Deposition at pp. 60-61, 63-64, 77 (Jan. 10, 2008).

Because Ms. Sloan was a decision-maker and Ms. West was not, the Defendant argues that the latter's recollection is immaterial.[15]  The Defendant's argument is based on Ms. Sloan's lack of recall, which undoubtedly resulted in some degree from the Defendant's 13-month delay in production of the handwritten note.  *See infra* p. 11 & note 19.

Similar circumstances arose during the deposition testimony of John Mavros.  Mr. Mavros was admittedly one of two individuals who interviewed Ms. Stanphill and made the decision to hire someone else for the inside market sales position.  John Mavros Deposition at p. 11 (Jan. 10, 2008).  After the passage of roughly 13 extra months, the Defendant furnished a handwritten note.  Plaintiff's Exhibit 84.  The note stated: "M - don't come any better, ethical, work effort," and "M. she is in a hands off situation."  *Id.*  Ms. West stated that she had made the notations based on a discussion with John Mavros about Ms. Stanphill's application for an inside market sales position.  Martha West Deposition at pp. 19-20 (Jan. 10, 2008).  According to Ms. West, the reference to "M" corresponded to John Mavros and reflected his statements about Ms. Stanphill.  *Id.* at pp. 21-22.  Ms. West added that she had no doubt that at the time of the notes, Mr. Mavros "was referring to Carolyn Stanphill and saying, Don't come any better."  *Id.* at p. 22.  But Mr. Mavros stated that he

---

[15]    Defendant's Supplemental Reply in Further Support of its Motion for Summary Judgment at p. 2 (Feb. 8, 2008) ("While Plaintiff places significant import into these handwritten notes, she ignores the fact that they were *notes written by West, who did not participate in the hiring decisions* made by Sloan, Grimes, and Mavros." (emphasis in original)).

had no recollection of the statements,[16] which again was to be expected because he was testifying roughly 14 months after the handwritten notes should have been produced.[17]

As noted above, the Defendant argues that Ms. West's recollection is immaterial because Mr. Mavros was the decision-maker and he did not remember the statements. *See supra* p. 10 & note 15. But his lack of memory resulted at least in part from the Defendant's own delay. *See* John Mavros Deposition at p. 17 (Jan. 3, 2008); *see also supra* p. 10; *infra* note 19.

The materiality of the newly produced documents is clear, as the handwritten notes contain multiple references that would appear to bolster the Plaintiff's claim of age discrimination. *See supra* p. 8. But when asked about the notes, Ms. Sloan and Mr. Mavros were unable to recall virtually anything about the subjects.

With their lack of recollection, the Defendant argues that Ms. West's recollection is immaterial because she was not a decision-maker. *See supra* pp. 10-11 & note 15. Thus, the Plaintiff has lost the ability to obtain material information from two of the individuals held out by the Defendant as the decision-makers. As Julie Clark testified:

> Q.    Well, do you understand that if people cannot testify accurately as to the context and substance of those notes, then part of the information has been lost?

> [Objection omitted]

---

[16]    John Mavros Deposition at pp. 13-14, 16-17 (Jan. 10, 2008).

[17]    *See supra* p. 10; *infra* note 19.

11

THE WITNESS:     Yes.

Q.      Okay.  And that's what you've heard in here.  You have heard people
        come in and say, well, I don't remember, I don't remember, it's too
        long, I haven't seen the notes?

A.      Yes.

Q.      Okay.  Because nobody went back and tried to make sure that any
        questions or ambiguities about the notes were resolved back when the
        memory was fresh.  Nobody did that, did they?

[Objection omitted]

A.      I don't know.

Julie Clark Deposition at pp. 19-20 (Jan. 10, 2008).

        As Ms. Clark acknowledged, the passage of time diminished the Plaintiff's ability to

learn the  meaning of the notes to two of the three decision-makers.  The loss is magnified

by the Defendant's argument that characterization of the notes by the decision-makers is

dispositive and the recall of others is immaterial.  *See supra* pp. 10-11 & note 15.  In these

circumstances, the delay of roughly thirteen months resulted in substantial prejudice to the

Plaintiff.

<u>The Defendant's Argument on Prejudice</u>

        The Defendant views the issue of prejudice differently.  According to the Defendant,

the Plaintiff waited so long to depose Ms. Sloan and Mr. Mavros that their memories would

have faded even if the notes had been furnished earlier.  Defendant's Response to Plaintiff's

Motion for Costs and Affirmative Relief Based on Discovery Violations at pp. 7-8 (Feb. 1,

2008).  This approach is misguided because it assumes that the Plaintiff would have used the same deposition schedule with or without the handwritten notes.

If the Defendant had timely produced the documents, two unanswerable questions would have been answered:  (1) whether the Plaintiff would have deposed the Defendant's employees more quickly than she did, and (2) whether Julie Sloan and John Mavros would have had greater recollection of the six documents.

Without the documents, the Plaintiff's attorney chose to depose Ms. Sloan and Mr. Mavros in October 2007.  As the Defendant points out, memories undoubtedly would have faded by that point.  But no one knows whether the Plaintiff would have pursued the same deposition schedule if she had known of the six documents as early as November 2006, when they should have been produced.

With the benefit of hindsight, Plaintiff's attorney states that he would have wanted to conduct the depositions quickly, while memories were fresh.  Plaintiff's Reply in Support of Her Motion for Costs and Affirmative Relief Based on Discovery Violations at pp. 8-9 (Feb. 8, 2008).  No one can rewrite the past, and the Court has no way of knowing whether the Plaintiff's attorney would have deposed Ms. Sloan and Mr. Mavros quickly upon receipt of the handwritten notes.  But the Court also has no way of knowing whether the Plaintiff's attorney would have waited another eleven months to take the depositions if he had known of the six documents when he should have had them.[18]

---

[18]     One commentator wrote:

The present question is whether the Court should indulge an assumption in favor of the party who was at fault or the party who was not at fault.  At a minimum, the Court believes that one *could* indulge an assumption in favor of the Plaintiff, who was unquestionably the party harmed by the delay.  *See infra* note 20.  In these circumstances, the Defendant's 13-month delay cannot be regarded as harmless.

Sanction Involving a Permissible Inference from the Delay

One can fairly infer that if the depositions had been taken more quickly, Ms. Sloan and Mr. Mavros would have had a better recollection of the events discussed in the handwritten notes[19] and that their deposition testimony would have favored the Plaintiff.  If this step would be a fair one, the Court should allow the jurors to draw this inference if they believe that it is appropriate.[20]

---

> The attorney may need to depose a witness . . . immediately if the witness . . . may forget important facts or is prone to memory loss . . . .  On the other hand, it may be appropriate to schedule a deposition for much later in the discovery process if the attorney first needs particular information or documents to more thoroughly and effectively question the witness . . . .

3 Ervin Gonzalez, *The Florida Bar: Discovery* 41 (2006).

[19]  *See* Note, *Don't Walk the Line: Ethical Considerations in Preparing Witnesses for Deposition and Trial*, 18 Rev. Litig. 135, 157 (1999) ("A witness's perceptions of critical events are easily eroded and distorted with time.").

[20]  When the Defendant incurred the duty to supplement, Federal Rule of Civil Procedure 37(c)(1) authorized sanctions in two circumstances.

The first was when the withheld items were to be offered by the party that was at fault. There the offering party could not use the withheld information unless the delay was harmless or substantially justified.  *See* Fed. R. Civ. P. 37(c)(1) (with amendments to May 21, 2007).

The second situation was when the information would favor the party who was not at fault.

The then-existing version of Federal Rule of Civil Procedure 37(c)(1) expressly authorized a statement to "the jury of the failure to make the disclosure." Fed. R. Civ. P. 37(c)(1) (with amendments to May 21, 2007). With this disclosure, the jury should be able to draw inferences about what the testimony would have been if the Defendant had seasonably supplemented its document production.

The Plaintiff seeks to go further in two ways, proposing an order designating its version of the documents as true and requiring the jury to draw inferences favorable to Ms. Stanphill as a result of the delay. Both sanctions would be misguided, as they would force the jury to overlook existing conflicts in the evidence and direct the outcome based solely on the delay in production of the six documents.

The delay is significant, and the documents appear material. But conflicts in the evidence exist, and the jury should be able to draw its own inferences from the delay. The

---

In this scenario, preclusion of the evidence would obviously be inappropriate. *See* Fed. R. Civ. P. 37(c) - advisory committee notes: 1993 amendments ("Preclusion of evidence is not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party."). But when the delay is neither harmless nor substantially justified, sanctions may be just as appropriate as in the first scenario. *See Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 n.2 (4th Cir. 2003) ("The alternative sanctions referenced in [Fed. R. Civ. P. 37(c)] are primarily intended to apply when a party fails to disclose evidence helpful to an *opposing* party." (citation omitted; emphasis in original)). Thus, when the withheld documents would support the party who was not at fault, the Court may impose "other appropriate sanctions." *Id.*

The present situation involves the second scenario, as the Plaintiff is the party who wants to use the documents and the Defendant is the party that failed to timely produce them. Thus, exclusion of the documents would entail sanctions against the wrong party. If sanctions are appropriate, they should involve something other than exclusion of the six documents.

Plaintiff's proposed sanctions would turn the Court into the fact-finder with substitution of its judgment for that of the jury.  By authorizing a permissible inference, instead of a conclusive one, the Court will permit the jury to consider the delay with the other evidence and draw its own conclusions.[21]

Accordingly, the Court will instruct the jury that it can draw inferences adverse to the Defendant based on its failure to timely supplement its document production with Plaintiff's Exhibits 84, 86, 88, 89, 90, and 91.

<u>Sanction Involving Reimbursement of the Plaintiff</u>

The final issue is whether the Defendant should reimburse the Plaintiff for her additional legal expenses.  Reimbursement is warranted.

As the Plaintiff points out, her attorney had to reopen depositions and supplement summary judgment briefing which had already been regarded as complete eighteen days earlier.[22]  Plaintiff's Motion for Costs and Affirmative Relief Based on Discovery Violations with Authority at p. 10 (Jan. 11, 2008).

---

[21]     *See Baron v. Sayre Memorial Hospital, Inc.*, Case No. CIV-98-243-A, Jury Instruction No. 11 (W.D. Okla. filed June 30, 1999) (instructing the jury that if it finds material alteration of a medical record, it could infer that the facts stated in the altered document were pretextual or bogus); *see also Testa v. Wal-Mart Stores, Inc.*, 144 F.3d 173, 177 (1st Cir. 1998) (stating that for spoliation, the adverse inference is permissive rather than mandatory).

[22]     The Defendant filed a reply brief in support of the summary judgment motion on December 3, 2007.  Plaintiff's Exhibits 84, 86, 88, 89, 90, and 91 were produced between 18 and 23 days later. *See supra* note 13.

The Defendant points out that the Plaintiff's counsel would have had to prepare deposition questions and summary judgment briefs with the newly produced documents in mind, with or without the delay.  Defendant's Response to Plaintiff's Motion for Costs and Affirmative Relief Based on Discovery Violations at p. 11 (Feb. 1, 2008).  But the Plaintiff's attorney would undoubtedly have been able to accomplish his tasks more efficiently if he had not had to do them at two different times.

Thus, the Court orders reimbursement of the Plaintiff for her additional attorney fees and other legal expenses as a result of the delay.  By June 16, 2008, the Plaintiff shall file a statement, identifying all attorney fees  and other expenses incurred as a result of the inefficiencies attributable to the delay.  By July 3, 2008, the Defendant may file a written response with regard to whether some or all of these attorney fees and other legal expenses were the result of the delay in production of the six documents.[23]

## Conclusion

In summary, the Court grants the Plaintiff's motion for sanctions.  The sanctions will involve reimbursement for additional legal expense and issuance of a jury instruction permitting an adverse inference from the delay in production of Plaintiff's Exhibits 84, 86, 88, 89, 90, and 91.

---

[23]     The parties need not file the two documents if counsel are able to reach an agreement on the amount of the attorney fees and other legal expenses to be reimbursed.

So ordered this 3rd day of June, 2008.

Robert E. Bacharach
United States Magistrate Judge