IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

CAROLYN STANPHILL, )
)
Plaintiff, )
)
v. )      Case No. CIV-06-985-BA
)
HEALTH CARE SERVICE CORP., )
d/b/a BLUECROSS BLUESHIELD )
OF OKLAHOMA, )
)
Defendant. )

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Ms. Carolyn Stanphill seeks damages for age and gender discrimination, invoking the Age Discrimination in Employment Act ("ADEA"), Title VII, and state law. Health Care Service Corp. seeks summary judgment. The motion is:

- denied on the gender discrimination claim under Title VII and the age discrimination claim under the ADEA,

- denied with respect to the federal claim for "dignitary harm," and

- reserved with respect to the claims involving liability and recovery for "dignitary harm" under Oklahoma law.

## UNDISPUTED FACTS

The Plaintiff became an employee of the Defendant in June 1993. In 2006, Ms. Stanphill was informed of the restructuring of her department and the elimination of all positions in her 2-9 marketing group.

Ms. Stanphill sought the positions of Account Executive 2-50, Account Consultant 2-50, and Inside Market Sales Representative.

For the Account Executive 2-50 position, the Defendant interviewed:

- Ms. Stanphill, then age 55,

- Ms. Y.F., then age 49,

- Mr. S.B., then age 36, and

- Mr. J.H., then age 37.

Mr. J.H. was given the Account Executive 2-50 position.

There were two positions available as an Account Consultant 2-50.  For these positions, the Defendant again interviewed Ms. Stanphill, Ms. Y.F., and Mr. J.H.  In addition, the company interviewed:

- Ms. D.G., then age 44,

- Ms. L.F., then age 36, and

- Ms. M.R., then age 46.

Ms. L.F. and Ms. M.R. obtained the positions.

For the position of Inside Market Sales Representative, the Defendant interviewed Mr. S.B. and Ms. Stanphill.  Mr. S.B. obtained the job offer and accepted.

## STANDARD FOR SUMMARY JUDGMENT

"[S]ummary judgment is not ordinarily appropriate for settling issues of intent or motivation . . . ."  *Cone v. Longmont United Hospital Association*, 14 F.3d 526, 530 (10th

Cir. 1994) (citations omitted).  But the Court must order summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When confronted with a motion for summary judgment, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party."  *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

<u>STANDARD FOR CLAIMS ARISING UNDER THE ADEA AND TITLE VII</u>

Ms. Stanphill alleges that after a company-wide reorganization, she was unable to remain with the Defendant because of her age and gender.[1]  Because the Plaintiff's evidence is circumstantial, the Court applies the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Timmerman v. United States Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).[2]

Under *McDonnell*, Ms. Stanphill must establish a *prima facie* case of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Then the burden shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason for [Ms. Stanphill's] rejection."  *Id.*  At that point, Ms. Stanphill would regain the burden and would

---

[1]      Ms. Stanphill does not allege that the reorganization was discriminatory.  Nonetheless, the Defendant seeks summary judgment in part based on a failure to prove discrimination in the reorganization.  This issue is moot.

[2]      The same scheme is applied to the ADEA and Title VII claims.  *See Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1166 (10th Cir. 1998).

need to show that the proffered reason was a pretext for discrimination.  *See Timmerman v. United States Bank, N.A.*, 483 F.3d at 1113.  For pretext, Ms. Stanphill must demonstrate either that the Defendant likely had a discriminatory motivation or that its explanation for the hiring decision is unworthy of credence.  *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998).  The latter may be shown through "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action,'" such that a reasonable fact-finder could rationally find the explanation unworthy of belief.  *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118 (10th Cir. 2007) (citation omitted).

## ALLEGATIONS OF AGE DISCRIMINATION IN VIOLATION OF THE ADEA

The Defendant is not entitled to summary judgment on the ADEA claim.

### I.      The Plaintiff's *Prima Facie* Case

The Defendant refers to authorities involving a *prima facie* case under the ADEA, but does not dispute that Ms. Stanphill has met her threshold burden.  Thus, the Court need not address the sufficiency of a *prima facie* showing for purposes of the ADEA.[3]

### II.      The Defendant's Explanation and the Plaintiff's Evidence of Pretext

The Defendant states that it had declined to hire the Plaintiff for the available positions because:

---

[3]      *See*, *e.g.*, *Kerr v. Valdez*, 55 Fed. Appx. 491, 495 (10th Cir. Dec. 31, 2002) (unpublished op.) ("Because defendants did not argue that plaintiff had failed to make a prima facie case, the district court did not err in assuming such a case had been established and in proceeding to defendants' burden to show a nondiscriminatory reason for its hiring decision.").

- she had given poor interviews and reflected a lack of enthusiasm, and

- the jobs went to applicants with greater experience in direct sales.[4]

Ms. Stanphill provides evidence of weaknesses in the Defendant's explanations,[5] and a reasonable juror could find pretext.

A.      Evidence Permitting an Inference that the Defendant's Employment Criteria Had Included Age

In part, the Plaintiff presents a memorandum created by Ms. Julie Sloan, which listed the job applicants and purported to reflect her evaluation of them.  On this document, a handwritten note states: "age, tenure, productivity."   Plaintiff's Supplemental Brief in Opposition to Summary Judgment, Exhibit 86 (Jan. 10, 2008) ("Plaintiff's Supplemental Response").  The Defendant asserts that Ms. West had made the notation and that she was not a decision-maker.  Both assertions are true.  Still, the jury could reasonably infer from the evidence that the decision-makers had relied on company criteria involving age.

Generally, age-related comments about the plaintiff are considered "material" on the issue of pretext only if the speaker was one of the individuals who had made the disputed

---

[4]     Defendant's Motion for Summary Judgment and Brief in Support Thereof at pp. 25, 27 (Oct. 26, 2007) ("Defendant's Motion for Summary Judgment"); *see also* Defendant's Supplemental Reply in Further Support of its Motion for Summary Judgment at p. 5 (Feb. 8, 2008) ("Defendant's Supplemental Reply") (identifying "direct sales" as the relevant job requirement).

[5]     In addition to the proof discussed below, Ms. Stanphill relies on evidence of pretext involving: (1) refusal to allow an application for trainee positions, (2) offer of a severance package with a waiver of discrimination claims, (3) composition of the workplace, (4) inadequacy in an internal investigation, and (5) inquiry about retirement.  Even without this evidence, however, summary judgment would be inappropriate.  Consequently, the Court need not consider Ms. Stanphill's additional evidence.

employment decision.  *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998).  In this case, however, the Plaintiff has presented evidence which would permit a reasonable inference that the company policy was to consider age in the selection of job applicants following a reduction in force.

Ms. West testified that she had written the note after a discussion with Ms. Lori Willmath, who was the Defendant's employee with responsibility for personnel issues in a reduction in force.  Deposition of Martha West at p. 41 (Jan. 3, 2008) ("Second Deposition of Martha West").[6]  According to Ms. West, Ms. Willmath stated that when the parent

---

[6]     Without any citation, the Defendant states in a brief that "the notes 'age, tenure, productivity' were written on Sloan's interview notes by *West* based on a conversation with an *employee* of Defendant's parent company - who had nothing to do with the interview or selection decision." Defendant's Supplemental Reply at p. 3 (emphasis in original); *see also id.* at p. 4 (stating again, without any authority,  that Lori Willmath was an employee of the Defendant's "parent company" and lacked any involvement "in any way in the hiring decision").   The assertion is misleading in one respect and begs the question in another.

The reference to Ms. Willmath as an employee of the "parent company" is misleading.  Ms. West did testify that Lori Willmath had been employed by the Defendant's "parent company." Second Deposition of Martha West at p. 41.  But Ms. West quickly pointed out that the subsidiary had merged into the parent company prior to Ms. Willmath's references to age, tenure, and productivity.  *Id*; *see infra* p. 8.

The Defendant also begs the question by asserting, without any evidentiary support, that Ms. Willmath "had nothing to do with the interview or selection decision."  *Supra* note 6 (quoting Defendant's Supplemental Reply at p. 3).  Ms. West acknowledged that Ms. Willmath was the person "who [was] responsible when there [were] reductions in force" and would have said that "they" considered age, tenure, and productivity "of all the people involved" when positions were to be eliminated.  Second Deposition  of Martha West at p. 41.  One might infer, as the Defendant asserts, that Ms. Willmath had "nothing to do with the interview or selection decision."  *Supra* note 6.  But the fact-finder could attribute weight to Ms. Willmath's remark in light of her role in the Defendant's personnel issues.  *See infra* pp. 8-9.

company "look[ed] at reductions in force," it considered "the age, the tenure, and the productivity of all the people involved." *Id.*

The resulting issue is the relevance of the alleged remarks by Ms. Willmath and Ms. West. As the Defendant argues, Ms. Willmath and Ms. West were not among the individuals who had decided to reject Ms. Stanphill's job requests. But Ms. Willmath's reference to age could support a finding of pretext in light of: (1) the sanctions previously imposed, which would include allowance of an adverse inference from the delay in production; and (2) the potential inference that Ms. Willmath's explanation was used by the Defendant to decide who to hire.

As discussed elsewhere, the Defendant produced the handwritten note roughly thirteen months after it should have been produced. *See* Order at pp. 1, 7-9 (June 3, 2008). Had the document been timely produced, the three decision-makers may have recalled discussions involving Ms. Willmath's reference to age as one of the parent company's criteria in a reduction in force. In granting sanctions to the Plaintiff, the Court reasoned in part that timely production could have resulted in testimony by the decision-makers regarding reliance on Ms. Willmath's apparent statement that the parent company considered age in determining who to retain in a reduction in force. *Id.* at pp. 7-16. The Court explained that under Federal Rule of Civil Procedure 37(c), the jury will be allowed to draw inferences from the handwritten notation on "age" as a criterion in light of the Defendant's thirteen-month delay in production. *Id.* at pp. 14-16. The availability of this inference could render the note

relevant even though Ms. Willmath and Ms. West were not directly involved in the decisions to reject Ms. Stanphill's applications. If the Defendant had timely produced the handwritten note, the Plaintiff may have been able to elicit favorable testimony by Ms. Sloan, Mr. Mavros, or Ms. Grimes about the impact of the note or Ms. Willmath's remark. *See id.* at pp. 7-16.

Even without the sanction, the fact-finder could infer that the Defendant had used Ms. Willmath's remark for guidance on who to hire. As noted above, Ms. West stated that Ms. Willmath had responsibility for the parent company's decisions on personnel issues in a reduction in force. *See supra* p. 6. And, according to Ms. West, the Defendant had become a part of the parent company just "a few months prior." Second Deposition of Martha West at p. 41. Ms. West could not remember who had initiated the call, but acknowledged that she could have learned of the need to talk with Ms. Willmath because of her role in the parent company. *Id.* From this evidence, the fact-finder could reasonably infer that:

- Ms. West had elicited guidance from Ms. Willmath that the Defendant was to consider age in deciding who to retain in the reduction in force[7] and

---

[7]    *See Metzger v. Illinois State Police*, 519 F.3d 677, 682 (7th Cir. 2008) ("in certain circumstances a non-decisionmaker can exert influence of such a degree as to make his employer liable for his actions" (citation omitted)); *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007) ("if a subordinate . . . sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process").

• Ms. Sloan, Mr. Mavros, and Ms. Grimes had acted on the information.

While Ms. West and Ms. Willmath were not directly involved in the decision to decline Ms. Stanphill's job requests, the evidence of "age" as a factor cannot be disregarded as inconsequential talk.  The fact-finder could regard Ms. Willmath's statement to Ms. West as evidence that Ms. Sloan, Mr. Mavros, and Ms. Grimes had followed a policy of considering age when they rejected Ms. Stanphill's requests for a job following the reorganization.  *See Bevan v. Honeywell, Inc.*, 118 F.3d 603 (8th Cir. 1997).[8]

B.   The Defendant's Explanations for the Hiring Decisions

The Defendant argues that it was entitled to exercise its business-judgment in the selection of job candidates.  The Court agrees.  But in certain circumstances, the fact-finder can reasonably regard the business-judgment as "so idiosyncratic or questionable" that it could suggest "a pretext for illegal discrimination."  *Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1169 (10th Cir. 1998) (citations omitted).

Viewed in the light most favorably to Ms. Stanphill, the evidence could suggest sufficient idiosyncrasies to indicate pretext.  The Defendant purported to disregard multiple

---

[8]   In *Bevan v. Honeywell, Inc.*, the human resource manager asked department heads to consider opportunities for "'younger, promising talents.'"  *See Bevan v. Honeywell, Inc.*, 118 F.3d 603, 606 (8th Cir. 1997).  In a subsequent reorganization, the plaintiff lost his job and he claimed discrimination under the ADEA.  *See id.* at 606-607.  The defendant argued that the human resource manager's request involved a "stray remark[]" by a nondecisionmaker and could not create an inference of age discrimination.  *See id.* at 610.  The federal appellate court rejected the argument, reasoning that even though the human resource manager was not a decision-maker, his request related to the decisional process by suggesting a "company preference for younger talented individuals."  *Id.*  This preference "constituted proper circumstantial evidence" on the issue of pretext.  *Id.*

job responsibilities and rely solely on Ms. Stanphill's lack of experience in direct sales, without any inquiry into the subject.  Julie Sloan decided not to give Ms. Stanphill or one of the other older employees a job as an account consultant based on subjective considerations that had appeared to give her own supervisor "heartburn."   And one of the younger individuals hired over Ms. Stanphill would not have satisfied the initial job requirements without a waiver of certain requirements.  In combination, the fact-finder could regard these circumstances as sufficiently questionable to justify disbelief in the explanation given for the hiring decisions.

<u>Allegation of Poor Interviews</u>

The Defendant alleges that the Plaintiff had given poor interviews, and Ms. Stanphill counters that both interviews were entirely subjective.  The fact-finder could regard the subjectivity of the process as a "red flag."

Generally, the existence of subjective criteria would not create evidence of pretext. *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007).  However, pretext can be inferred when "the criteria on which the employers ultimately rely are entirely subjective in nature."[9]

---

[9]      *Green v. New Mexico*, 420 F.3d 1189, 1195 (10th Cir. 2005) (discussing pretext in a Title VII discrimination case); *see also Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002) (presuming pretext when the employer's decisions were based entirely on subjective criteria).

Health Care Service Corp. contends that it had used an objective criterion in the decision-making process: experience in direct sales.[10]  However, the Plaintiff has provided evidence to the contrary, and the dispute precludes summary judgment.

For the position of Inside Market Sales Representative, Ms. Stanphill interviewed with Mr. John Mavros and Ms. Cynthia Grimes.  In deciding to hire the younger applicant, Mr. Mavros stated that the dispositive consideration was Ms. Stanphill's lack of experience in direct sales.[11]  But Mr. Mavros and Ms. Grimes admitted that they had not asked Ms. Stanphill any questions about her direct sales experience.  *See* First Deposition of John Mavros at pp. 67-68; First Deposition of Cynthia Grimes at p. 36.  The omission could be material, as Ms. Stanphill presents evidence of her direct sales experience and could have discussed this experience if she had been asked about it.  Deposition of Carolyn Stanphill at pp. 53, 56-59 (Sept. 25, 2007) (detailing her direct sales experience).  From the combination

---

[10]    The Defendant also suggests that it could not have discriminated because two of the interviewers were in the protected age group.  Even if the evidence would be considered relevant, it would not be conclusive.  *See Castaneda v. Partida*, 430 U.S. 482, 499 (1977) ("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.").  Thus, the Defendant's suggestion would not avoid a genuine issue of material fact regarding the existence of pretext.

[11]    Deposition of John Mavros at p. 62 (Oct. 22, 2007) ("First Deposition of John Mavros") (stating that he and Ms. Grimes had offered the job to S.B. because Ms. Stanphill had lacked "direct to consumer experience"); *see also* Deposition of Cynthia Grimes at p. 36 (Oct. 29, 2007) ("First Deposition of Cynthia Grimes") ("I think direct sales experience was probably the only factor that really . . . you could look at objectively.").

of evidence, the trier of fact could choose to disbelieve the company's explanation[12] and regard the interview as entirely subjective.

The Plaintiff also interviewed with Ms. Julie Sloan.  Ms. Sloan admitted that even though she had been asked to tie her reasons to the job requirements,[13] she had not asked the Plaintiff about many of the key objective job requirements.[14]  For example, Ms. Sloan admittedly did not discuss Ms. Stanphill's sales experience in any detail.  First Deposition of Julie Sloan at p. 46 (Oct. 29, 2007) ("First Deposition of Julie Sloan").  Nonetheless, in its briefing, the Defendant points to a lack of direct sales experience as the one objective factor that Ms. Sloan had relied upon.  Defendant's Supplemental Reply at p. 5 ("Sloan's selections *were* based on job requirements - specifically, direct sales." (emphasis in original)); *see supra* p. 11.

According to the Defendant, it was entitled to rely on Ms. Stanphill's lack of experience in direct sales.  In deciding whether to believe this explanation, however, the fact-finder could legitimately consider the absence of questions on the subject and Ms. Stanphill's

---

[12]    *See Dennis v. Columbia Collecton Medical Center, Inc.*, 290 F.3d 639, 647 (4th Cir. 2002) (holding that an inference of pretext was permissible because "Hiott [had] claimed to dismiss Dennis' application for lack of management experience without knowing the full extent of that experience").

[13]    *See infra* pp. 14-15.

[14]    *See* Second Deposition of Julie Sloan at pp. 23-27 (Jan. 3, 2008) ("Second Deposition of Julie Sloan") ("I couldn't have [matched up the job requirements], I didn't ask any of them.").

proof that she had such experience.  The fact-finder would not be compelled to infer pretext from this evidence.  But this inference would at least be reasonable.

<u>Alleged Lack of Enthusiasm in the Interviews</u>

In a reply brief, the Defendant identifies the "nondiscriminatory reason" as the Plaintiff's failure to indicate any interest in the jobs.[15]  The Plaintiff supplied contrary testimony in her deposition.  There she stated that she had indicated during the interview process that she wanted to continue to work for BlueCross and BlueShield.  Deposition of Carolyn Stanphill at p. 241 (Sept. 25, 2007).

The fact-finder could decide to credit the Defendant's explanation involving a lack of enthusiasm for the jobs.  But, the fact-finder could also regard the Defendant's explanation in the reply brief as a pretext for discrimination.[16]

The Defendant's purported reliance on Ms. Stanphill's lack of enthusiasm is not conclusive.  Otherwise, an employer could always avoid liability by relying on a lack of enthusiasm.  Sitting *en banc*, the D.C. Court of Appeals explained:

---

[15]     Defendant's Reply in Further Support of Its Motion for Summary Judgment at p. 2 (Dec. 3, 2007); Defendant's Supplemental Reply at p. 9; *see also* Defendant's Motion for Summary Judgment at  p. 25 (stating that the Plaintiff had not received the Inside Market Sales job in part because she had told the interviewers that she "really did not want the job").

[16]     *See Lujan v. Walters*, 813 F.2d 1051, 1057 (10th Cir. 1987) ("we have observed that the use of such subjective criteria as 'dedicated' and 'enthusiasm' may offer a convenient pretext for giving force and effect to prejudice" (citation omitted)); *see also Mohammed v. Callaway*, 698 F.2d 395, 401 (10th Cir. 1983) (stating that "[t]he use of such subjective criteria as 'dedication' and 'enthusiasm' . . . 'may offer a convenient pretext'" for racial prejudice (citation omitted)).

> The dissent complains that [the plaintiff] has offered no evidence that he was more enthusiastic than [the person ultimately hired] at the interview. It would be difficult to offer any such evidence, in the absence of a videotape of the interview. Under the dissent's approach, an employer could defeat any employment discrimination claim by a job applicant by citing the interviewer's subjective assessment that he was less enthusiastic than some other candidate.

*Aka v. Washington Hospital Center*, 156 F.3d 1284, 1298 n.19 (D.C. Cir. 1998) (*en banc*) (citation omitted).

The appeals court's reasoning is persuasive, and the evidence involving a lack of interest is not dispositive. The fact-finder could reasonably infer pretext based on the subjectivity of the explanation and Mr. Stanphill's testimony that she had indicated her desire to remain with the company.

<u>Internal Discomfort with the Subjectivity of Ms. Sloan's Explanation</u>

"[T]here is certainly a level of subjectivity in any interview-based selection process . . . ." *Santana v. Denver*, 488 F.3d 860, 866 (10th Cir. 2007); *see also Riggs v. Airtran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007) ("we have recognized that there is a level of subjectivity inherent in any evaluation process" (citation omitted)). But the Plaintiff has also presented evidence of discomfort among the Defendant's supervisory personnel about the subjectivity of Ms. Sloan's hiring decisions.

Ms. Sloan initially documented her hiring decisions in a memorandum dated February 8, 2006. *See* Plaintiff's Supplemental Response, Exhibit 88. Ms. Martha West noted on the memorandum that her supervisor had "heartburn" because of the subjectivity of the explanation. Plaintiff's Supplemental Response, Exhibit 88; *see* Second Deposition of

-14-

Martha West at pp. 52-56 (testifying that she made the handwritten notes and attributing the comments to her supervisor, Mr. David Ruttman).   One of Ms. West's notes stated that "she" had "met" the "only objective measure."   Plaintiff's Supplemental Response, Exhibit 88.   Ms. West believed that the note had referred either to Ms. Stanphill or Y.F.   *See* Second Deposition of Martha West at p. 56.

The Plaintiff's evidence would permit a reasonable trier of fact to conclude that the interviews had not involved discussion about objective job criteria and that Ms. Sloan had crafted the subjective explanation to conceal the true reason for her hiring decisions.

> Disregard for Multiple Responsibilities of the Account Consultant 2-50 Position

As noted above, the Defendant insists that Julie Sloan had selected the two account consultants based in part on experience in direct sales.   *See supra* p. 12.   But the Defendant's written description of the Account Consultant 2-50 job reflected many other requirements, such as knowledge of the product line, sales and negotiation skills, underwriting knowledge, knowledge of Blue Card national network arrangements, contract knowledge for product lines, ability to effectively communicate, knowledge of medical underwriting practices and to inquire regarding known medical conditions, knowledge of competitors' products and practices, and excellence in public speaking.   Plaintiff's Brief in Opposition to Summary Judgment, Exhibit 33 (Nov. 21, 2007).   Ms. Sloan admitted that she had not asked about any of these job requirements.   First Deposition of Julie Sloan at pp. 47-51; Second Deposition of Julie Sloan at pp. 23-27.

Apart from the absence of questioning on many job requirements, the fact-finder could legitimately infer that Ms. Sloan had failed to explore other sources of information.  For example, Ms. Sloan stated that she:

- had purposely avoided input from the applicants' supervisors,[17]

- had only flipped through the personnel files, and

- had not researched past performance.

First Deposition of Julie Sloan at pp. 16-19, 31-41.

As the Defendant implies, the trier of fact could infer that Julie Sloan had stressed direct sales experience because this aspect of the job was most important to her.  But the trier of fact could also infer subterfuge from Ms. Sloan's apparent disregard for multiple requirements of the job.  "When an employer picks one of a list of posted job qualifications and claims that it was actually decisive without regard to the others, the jury is certainly permitted to conclude, in light of the totality of the evidence, that this may have been done as a post hoc justification of a decision made on other grounds."[18]

---

[17]     At her first deposition, Ms. Sloan stated: "I did not [consult with anyone prior to making that decision] and, in fact, . . . specifically indicated to [the applicants' supervisor] that I didn't want to speak to anyone about any of the people, that this was my decision."  First Deposition of Julie Sloan at p. 16.  After recreating her explanations, Ms. Sloan claimed that she had sought input from the applicants' supervisors.  Plaintiff's Supplemental Response, Exhibit 39 at p. 4.  Ms. Sloan could not explain the inconsistency in her testimony.  *See* Second Deposition of Julie Sloan at pp. 51-53.  The fact-finder could "recognize the reality that an employer asked to justify its action after the fact has an incentive to claim that the 'real' criteria were those on which the chosen employee happens to perform best relative to the plaintiff."  *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 646 n.2 (4th Cir. 2002).

[18]     *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 646 n.2 (4th Cir. 2002); *see also Juarez v. ACS Government Solutions Group, Inc.*, 314 F.3d 1243, 1247 (10th Cir. 2003)

Change in Job Requirements

The evidence of idiosyncrasies in the Defendant's explanation includes a change in the job requirements to accommodate one of the younger applicants, M.R.[19] This individual would not have qualified under the minimum eligibility standards originally set out for the account consultant positions. Nonetheless, the Defendant chose M.R. over the Plaintiff. *See supra* p. 2.

Health Care Service Corp. initially listed the minimum job requirements to include a total of eight years from a combination of college, BlueCross/BlueShield customer service work, or business to business sales experience. Second Deposition of Martha West at pp. 71-72. The Plaintiff presented evidence that M.R. had not attended college, lacked eight years business to business experience, and had worked for BlueCross/BlueShield for less than two years. Second Deposition of Martha West at pp. 72-74; Second Deposition of Julie Sloan at pp. 61-62; Plaintiff's Brief in Opposition to Summary Judgment, Exhibit 9 (Nov. 21, 2007). Thus, M.R. would not have qualified for the account consultant 2-50 job without a change in the requirements. Plaintiff's Supplemental Response, Exhibit 89. Ms. West believed that she had discussed the situation and that Ms. Sloan authorized a deviation to allow M.R. to qualify for the position. Second Deposition of Martha West at pp. 75, 78.

---

(upholding a jury finding of employment discrimination in part based on evidence that the employer had failed to rate employees in two of eight categories in determining which employees to keep in a reduction in force).

[19]    M.R. was nine  years younger than the Plaintiff. *See* Second Deposition of Martha West at p. 77.

The fact-finder might find nothing suspicious in the change in job requirements.  But the fact-finder might also regard the change as a pretext, designed to accommodate a younger applicant who would not have otherwise met the job requirements.[20]

C.     Summary

Construed in the light most favorable to the Plaintiff, the evidence could convince a reasonable fact-finder to disbelieve the Defendant's explanations for its hiring decisions. Consequently, the Court denies the Defendant's motion for summary judgment on the Plaintiff's ADEA claim.

ALLEGATIONS OF GENDER DISCRIMINATION UNDER TITLE VII

The Defendant also seeks summary judgment on the Title VII claim, arguing that the Plaintiff has not presented evidence on a *prima facie* case or pretext.  In its objection, the Plaintiff has not responded to this portion of the summary judgment motion.[21]  Even without a response, however, the Court must consider the Defendant's motion and the existing summary judgment record to determine whether a genuine issue of material fact exists on the gender discrimination claim.  *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) ("If

---

[20]     *See Bergene v. Salt River Project Agricultural Improvement and Power District*, 272 F.3d 1136, 1143 (9th Cir. 2001) (holding that the fact-finder could regard an employer's explanation as pretextual when a job was given to someone who qualified only after a change in the job requirements); *see also Williams v. Nashville Network*, 132 F.3d 1123, 1132-33 (6th Cir. 1997) (*per curiam*) (holding that the fact-finder could regard the employer's explanation as pretextual when the plaintiff had met the requirements listed in the job description and the applicant ultimately selected did not).

[21]     The Plaintiff did address the gender discrimination claim in a surreply brief.  The Court assumes *arguendo* that assertion of new arguments in the surreply brief was too late.

the evidence produced in support of the summary judgment motion does not meet this burden [of production], 'summary judgment must be denied *even if no opposing evidentiary matter is presented.*'" (citation omitted; emphasis in original)).    The Court answers in the affirmative, as the existing summary judgment record reflects genuine issues of material fact on the Plaintiff's claim of gender discrimination.

A *prima facie* case of gender discrimination requires proof that Ms. Stanphill:

- belongs to a protected class,

- suffered an adverse employment action,

- was qualified for the positions at issue, and

- was treated less favorably than males.

*See Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007).

The Defendant has not challenged the existence of evidence for the Plaintiff on any of the elements.    *Cf.* Final Pretrial Report at p. 3 (Dec. 21, 2007) (stipulation that the "Plaintiff held the minimum qualifications" for positions as an Account Executive and employee in "Inside Sales").    Instead, Health Care Service Corp. argues that the circumstances of the hiring decisions cannot create an inference of unlawful discrimination because: (1) The Plaintiff admitted that she had alleged gender discrimination at the instigation of the EEOC; and (2) Mr. J.H. was a better job candidate than the Plaintiff.  The Defendant's argument is misguided as a matter of law.

For purposes of summary judgment, a reasonable inference of unlawful discrimination could exist if the claimant satisfies her evidentiary burden on the elements of a *prima facie* case and pretext.  *See Exum v. United States Olympic Committee*, 389 F.3d 1130, 1134-35 (10th Cir. 2004).  According to the Defendant, the Plaintiff lacked any evidence of an intent to discriminate based on her gender.  But the "'central purpose" of "the *McDonnell Douglas* method . . . is to relieve the plaintiff of the burden of having to uncover . . . evidence of discriminatory intent.'"  *Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1167 (10th Cir. 1998) (citation omitted).  Thus, "[i]f the plaintiff succeeds in showing a prima facie case[22] and presents evidence that the defendant's proffered reason for the employment decision was pretextual - i.e. unworthy of belief, the plaintiff can withstand a summary judgment motion and is entitled to go to trial."  *Randle v. Aurora*, 69 F.3d 441, 451 (10th Cir. 1995) (footnote omitted).[23]

---

[22]     The court elsewhere defined establishment of "a prima facie case of employment discrimination" as proof that the plaintiff was a member of a protected class, the plaintiff had applied for and had been qualified for an available position, the employer had rejected the plaintiff's application, and the employer had kept the position open or filled the position with someone who had not been in the protected class.  *Randle v. Aurora*, 69 F.3d 441, 451 n.13 (10th Cir. 1995); *see supra* p. 19.

[23]     The Defendant argues that the Plaintiff must present evidence that the adverse employment action had taken place under circumstances giving rise to an inference of unlawful discrimination. For this proposition, the Defendant relies on the following quotation from *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005) (citation omitted):

"The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'"  There must simply be a logical connection between each element of the prima facie case and the inference of discrimination.

The Defendant focuses on: (1) the Plaintiff's testimony that she had added the gender discrimination claim at the instigation of the EEOC, and (2) evidence of Mr. J.H.'s superior qualifications for the account executive position.

The Plaintiff's discussion about the role of the EEOC "is only one piece of evidence" and does not supplant the additional evidence involving a *prima facie* case and pretext. *Copp v. Unified School District # 501*, 882 F.2d 1547, 1553 (10th Cir. 1989).

Health Care Service Corp. also states that it hired Mr. J.H. as an account executive because:

- he had outside sales experience, was among the top ten in sales in his region during his first year in a previous job, had a college degree and presentation experience for groups of up to 150 individuals, and was professional in his interview, and

- Ms. Stanphill was unprofessional in her interview, had no presentation experience, lacked any experience in direct sales, and had no desire for an outside sales position.

The fact-finder might credit this explanation, but might also reasonably decline to do so for two reasons.

---

From this language, the Defendant appears to suggest that the Tenth Circuit Court of Appeals was adding to the plaintiff's burden of proof regarding a *prima facie* case. The suggestion is unsupportable in the cited decision. In *Plotke v. White*, the plaintiff claimed discriminatory discharge. *See Plotke v. White*, 405 F.3d at 1093. The district court granted summary judgment to the employer, reasoning in part that a *prima facie* case required proof that the position continued after the plaintiff's discharge and that no evidence had existed on this element. *See id*. at 1098-99. The Court of Appeals rejected the district court's view as an overly narrow interpretation of one of the elements of the plaintiff's *prima facie* case. *Id*. at 1100. In doing so the appellate court held that the element was flexible and that the plaintiff could alternatively establish a *prima facie* case, even without the element, through proof of other circumstances that could create an inference of discriminatory motive. *Id*. at 1100-1101.

First, the fact-finder could regard the explanation as inconsistent with some of the evidence.  For example, the summary judgment record contains evidence that the Plaintiff had her own experience in outside sales and had indicated a desire to remain with the company.  *See supra* pp. 11, 13.  As noted above, the employer's reliance on the Plaintiff's lack of enthusiasm is not conclusive because of the subjectivity of this criterion.  *See supra* pp. 13-14.  In addition, Ms. Sloan decided who to hire as an account executive, and she testified that she had not researched past performance of the applicants.[24]

Second, as discussed above, the Plaintiff has presented evidence involving inconsistencies in the explanation given by Mr. Mavros for the decision to hire a male for the Inside Market Sales position.  *See supra* pp. 11-13.  And the jury could reasonably reject the company's explanation with respect to the hiring of a male, S.B., over the Plaintiff.  For example, the jury could legitimately question the employer's explanation in light of Mr. Mavros' admission regarding:

- the absence of any written questions or criteria,

- the lack of any research into the applicants' work histories, and

- the absence of any consideration regarding sales performance, job evaluations, performance of goals, or product knowledge.

*See* First Deposition of John Mavros at pp. 52-55, 57-59.

---

[24]     *See supra* pp. 15-16.

Ultimately, the trier of fact could decline to infer gender discrimination. But the Plaintiff's evidence on the four elements of a *prima facie* case and on pretext requires denial of summary judgment on the Title VII claim.

<u>STATE LAW CLAIMS</u>

The Defendant seeks summary judgment on the Plaintiff's state law claims for age discrimination. The Court defers consideration of this argument.

Ms. Stanphill has asserted claims for age discrimination under federal and state law. Oklahoma law had once appeared to disallow state tort claims for age discrimination because federal law provides an adequate and exclusive remedy for relief. *See List v. Anchor Paint Manufacturing Co.*, 910 P.2d 1011, 1013 (Okla. 1996). Roughly a decade later, the Oklahoma Supreme Court addressed whether "a common-law *Burk* tort remedy [existed] for state age discrimination claims arising under the operation of the Oklahoma Constitution, Art. 5 § 46 and the provisions of the Oklahoma Anti-discrimination Act, 25 O.S. §§ 1101, et seq. and § 1901." *Saint v. Data Exchange, Inc.*, 145 P.3d 1037, 1037 (Okla. 2006) (citations omitted). The state appeals court answered in the affirmative, but did not overrule the earlier precedent or address the adequacy of the federal remedy. *Id.* at 1037-38.

The Oklahoma Supreme Court's subsequent decision has generated confusion, and judges in this district have disagreed on the current availability of a cause of action under

state law for age discrimination. Judges DeGiusti, Friot and Miles-LaGrange have answered

in the affirmative,[25] and Judges Heaton and Russell have answered in the negative.[26]

Recently, the Eastern District of Oklahoma certified the following questions to the

Oklahoma Supreme Court:

- "Did the Oklahoma Supreme Court in *Saint* overrule *List v. Anchor Paint Mfg. Co.*, 1996 OK 1, 910 P.2d 1011 (Okla. 1996)?"

- "Did the Oklahoma Supreme Court in *Saint* limit its holding to the adequacy of the state remedy for age discrimination under the Oklahoma Anti-Discrimination Act, OKLA. STAT. tit. 25, § 1101 *et seq.* and § 1901?"

- "Did the Oklahoma Supreme Court in *Saint* hold that a plaintiff alleging violations of the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* may also pursue and recover under a state law claim of wrongful discharge in violation of public policy based upon alleged age discrimination in the same action?"

Order Certifying Questions of Law to the Supreme Court of Oklahoma at p. 2, *Kruchowski*

*v. Weyerhaeuser Co.*, Case No. CIV-03-649 (E.D. Okla. July 19, 2007) (unpublished op.).

These questions are pending in the Oklahoma Supreme Court.

---

[25]    *See Miller v. Love's Travel Stops & Country Stores, Inc.*, 2008 WL 1841021 (W.D. Okla. Apr. 21, 2008) (DeGiusti, J.) (unpublished op.) (allowing a state tort claim); *Rutty v. Equi-Management Services, Ltd.*, 2007 WL 108946, Westlaw op. at 9 (W.D. Okla. Jan. 9, 2007) (Friot, J.) (unpublished op.) (same conclusion); *Taylor v. Roberts Truck Center*, 2007 WL 2121085, Westlaw op. at 1 (W.D. Okla. July 24, 2007) (Miles-LaGrange, J.) (unpublished op.) (same conclusion).

[26]    Order at pp. 6-7, *Peery v. Veolia Water North America-West, LLC*, Case No. CIV-06-721 (W.D. Okla. May 4, 2007) (Heaton, J.) (unpublished op.) (holding that the state law claim was not available); Order at pp. 1-2, *Johnston v. All Kinds of Minds*, Case No. CIV-06-1393 (W.D. Okla. Mar. 19, 2007) (Russell, J.) (unpublished op.) (same holding).

The Oklahoma Supreme Court will presumably answer whether Ms. Stanphill can pursue both an ADEA and state tort claim for age discrimination. As a result, the federal district court defers consideration of the issue while it is pending in the Oklahoma Supreme Court. *See Vining v. Enterprise Financial Group, Inc.*, 148 F.3d 1206, 1210 n.1 (10th Cir. 1998) (deferring consideration of an issue in light of certification to the state supreme court in a separate case).

<u>ALLEGATIONS OF "DIGNITARY HARM"</u>

The Defendant seeks summary judgment on the damage claim for "dignitary harm." The argument is rejected on the Title VII claims and reserved on the state law claims.

I.   <u>Federal Law Claims for "Dignitary Harm"</u>

According to the Defendant, damages for "dignitary harm" are unavailable on the Title VII claims.

In part, the Defendant argues that Oklahoma's workers' compensation act would bar recovery for psychological injuries. In making this argument, the Defendant does not specify whether it entails the claim under Title VII, state law, or both. As discussed below, the Court reserves consideration of the issue with respect to the state law claims. *See supra* pp. 23-25. Under the Supremacy Clause, the Oklahoma workers' compensation statute would not diminish recovery on the Title VII claim. *See Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1105 (10th Cir. 1998).[27]

_____

[27]   In *Roberts v. Roadway Express, Inc.*, an employee sued under Title VII and recovered damages, including those for emotional distress and mental anguish. *See Roberts v. Roadway*

The Defendant also contends that the Plaintiff has not incurred sufficient manifestations of emotional distress. This contention is invalid at the summary judgment stage.[28]

Under Title VII, a victim of intentional discrimination can recover damages for "emotional pain, . . . mental anguish, loss of enjoyment of life, and other nonpecuniary losses . . . ." 42 U.S.C. § 1981a(b)(3). The parties have presented limited evidence regarding the extent of Mr. Stanphill's alleged emotional distress. As the Defendant points out, Ms. Stanphill testified in her deposition only that she had taken two pills and had been upset regarding the loss of her job. Deposition of Carolyn Stanphill at pp. 212-14 (Sept. 25, 2007). But when asked about the manifestations of this mental distress, Ms. Stanphill answered:

---

*Express, Inc.*, 149 F.3d at 1102-1103. On appeal, the employer argued that the state workers' compensation act provided exclusive compensation for the plaintiff's emotional distress. *See id.* at 1105. The Tenth Circuit Court of Appeals rejected this argument, stating:

> If [the employer] means to argue that [the state's] Workers' Compensation Act provides the exclusive remedy for all work-related injuries including emotional distress caused by violations of the civil rights laws, that argument is readily disposed of by the Supremacy Clause.

*Id.* (citations omitted).

[28]    The Defendant does not present authority for its assumption that the Plaintiff must present evidence involving "manifestations" of emotional or dignitary injuries. Under Oklahoma law, damages for mental distress are only recoverable upon proof of "some manifestation of physical suffering." *McKeakin v. Roofing & Sheet Metal Supply Company of Tulsa*, 807 P.2d 288, 290 (Okla. Civ. App. 1990) (citations omitted). But "[t]he availability of mental anguish damages for a Title VII claim is determined by federal law." *EEOC v. WC&M Enterprises, Inc.*, 496 F.3d 393, 402 (5th Cir. 2007) (citation omitted).

"Just, you know, that I might not be able to support - help support our family, had a son in college, we had bills to pay."  *Id.* at p. 215.

At the summary judgment stage, the issue is whether one could reasonably conclude from this testimony that Ms. Stanphill had experienced emotional distress.  *See supra* pp. 2-3. The severity of the distress is immaterial at this stage.  Consequently, the Court rejects the Defendant's argument for summary judgment on the availability of emotional distress damages under Title VII.

II.    State Law Claim for "Dignitary Harm"

The Court is reserving judgment on the issue of whether Ms. Stanphill can proceed on a claim of wrongful termination under Oklahoma law.   *See supra* pp. 23-25. Consequently, judgment is also reserved on the availability of damages for "dignitary harm" on the state law claim.

SUMMARY OF RULINGS

The Defendant's motion for summary judgment is:

- denied on the age discrimination claim under the ADEA and the gender discrimination claim under Title VII,

- denied with respect to the federal claim for "dignitary harm,"

- reserved with respect to the claims under Oklahoma law, and

- reserved on the Plaintiff's claim for emotional distress damages under Oklahoma law.

So ordered this 15th day of July, 2008.


_____
Robert E. Bacharach
United States Magistrate Judge