IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CAROLYN STANPHILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-06-985-BA |
| | ) | |
| HEALTH CARE SERVICE CORP., | ) | |
| d/b/a BLUECROSS BLUESHIELD | ) | |
| OF OKLAHOMA, | ) | |
| | ) | |
| Defendant. | ) | |

**Order on the Defendant's Supplemental
Motion for Summary Judgment**

The Defendant terminated the employment of Ms. Carolyn Stanphill during a reorganization, and she applied for multiple jobs.  The company hired other individuals instead, and she sued for gender discrimination, age discrimination, and violation of state law.  During the pendency of the action, the Defendant offered to rehire Ms. Stanphill as a "Small Group Account Executive II," and she declined.  The Defendant seeks partial summary judgment on the Plaintiff's requests for front-pay and back-pay after the date of her decision to decline the job offer.  The Court overrules the partial summary judgment motion.

I.    Standard for Summary Judgment

The Court must order summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."[1]   When confronted with a motion for summary judgment, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party."[2]

## II.   Limitation on Back-Pay and Front-Pay

In *Ford Motor Co. v. Equal Employment Opportunity Commission*, the Supreme Court held that "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability."[3]   In applying this decision, the Tenth Circuit Court of Appeals has held that damages are cut off only if the employee had acted unreasonably in rejecting the offer of reinstatement.[4]   The job may be the one denied earlier to claimant or one that was substantially equivalent.[5]   To determine whether rejection of the equivalent job was reasonable, the Court must examine the employee's decision in light of

---

[1]      Fed. R. Civ. P. 56(c).

[2]      *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

[3]      *Ford Motor Co. v. Equal Employment Opportunity Commission*, 458 U.S. 219, 241 (1982). Although the *Ford* court addressed only a Title VII claim, the same principle applies on the claim arising under the Age Discrimination Employment Act ("ADEA").   *See Stanfield v. Answering Service, Inc.*, 867 F.2d 1290, 1296 (11th Cir. 1989) ("Although the *Ford* decision addressed the duty to mitigate damages under Title VII, it is instructive as a guide in interpreting the same duty under the ADEA." (citation omitted)).

[4]      *See Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1253 (10th Cir. 2004) ("Under *Ford Motor Co. v. EEOC*, a plaintiff's unreasonable rejection of an unconditional offer of reinstatement will cut off an employer's liability for damages as of the date the offer is rejected or expires." (citation omitted)).

[5]      *See Ford Motor Co. v. Equal Employment Opportunity Commission*, 458 U.S. 219, 231-32 (1982) (stating that a claimant "forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied" (footnote omitted)).

the surrounding circumstances.[6] The reasonableness of the Plaintiff's decision to reject a job offer ordinarily constitutes a question of fact.[7]

Resolution of the summary judgment motion requires consideration of: (1) the equivalence between a job as a "Small Group Account Executive II" and the positions allegedly denied to Ms. Stanphill based on discrimination, and (2) the reasonableness of the Plaintiff's rejection of the job offer.[8] On these inquiries, a genuine issue of material fact exists.

The Defendant argues in the summary judgment motion that *Ford Motor Co. v. Equal Employment Opportunity Commission* would prevent front-pay or back-pay after the decision to reject the job offer. For this argument, the Court considers whether a reasonable fact-finder could determine on the evidence presented that:

- the job offered to the Plaintiff was not substantially equivalent to the positions that she had sought[9] or

---

[6]     *See Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481, 1493 (10th Cir. 1989) ("a rejected offer of reinstatement does not end ongoing backpay liability if the claimant's rejection of the offer was reasonable given the form of the offer and the circumstances surrounding it" (citations omitted)); *Giandonato v. Sybron Corp.*, 804 F.2d 120, 124 (10th Cir. 1986) ("In determining whether the right to relief extends beyond the date of an offer of reinstatement, the trial court must consider the circumstances under which the offer was made or rejected, including the terms of the offer and the reasons for refusal." (citation omitted)).

[7]     *See Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 808 (8th Cir. 1982) ("Generally, it is the duty of the trier of fact to weigh the evidence to determine whether a reasonable person would refuse the offer of reinstatement.").

[8]     *See supra* pp. 2-3.

[9]     *See supra* p. 2.

3

- she had acted reasonably in declining Health Care Service Corp.'s job offer.[10]

On both issues, the Defendant bears the burden of proof.[11]

III.   <u>Substantial Equivalence of the Jobs</u>

The threshold issue is whether the jury would have been compelled to find that the job offered to the Plaintiff was substantially equivalent to one of the positions allegedly denied to her.  The Court answers in the negative.

A.   <u>The Legal Standard</u>

The jobs are considered "substantial equivalents" only if they provide "virtually identical . . . compensation, job responsibilities, [and] working conditions . . . ."[12]

---

[10]   *See supra* pp. 2-3.

[11]   *See Saladin v. Turner*, 936 F. Supp. 1571, 1582 (N.D. Okla. 1996) ("The employer bears the burden to prove it made an unconditional offer of reinstatement and that the plaintiff's rejection of it was objectively unreasonable." (citation omitted)); *see also Smith v. World Insurance Co.*, 38 F.3d 1456, 1465 (8th Cir. 1994) ("we believe the burden is correctly placed upon the employer to prove that it made an offer of reinstatement and that the plaintiff's rejection of it was objectively unreasonable").

[12]   *Rasimas v. Michigan Department of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983) (citations omitted); *see Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1203 (7th Cir. 1989) (adopting the quoted language); *see also Sellers v. Delgado Community College*, 839 F.2d 1132, 1138 (5th Cir. 1988) ("'Substantially equivalent employment' for purposes of Title VII mitigation has been defined as employment which affords virtually identical . . . compensation, job responsibilities, [and] working conditions . . . as the position from which the Title VII claimant has been discriminatorily terminated." (citation omitted)); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir. 1991) ("'Substantially equivalent employment' is employment that affords virtually identical . . . compensation, job responsibilities, [and] working conditions . . . to those available to employees holding the position from which the Title VII claimant has been discriminatorily terminated." (footnote omitted)).

B.   Jobs as an Account Executive, Account Executive Trainee, and Individual Marketing Sales Representative

According to the final pretrial report, Ms. Stanphill was subjected to age and gender discrimination when she applied for jobs as an account executive, account executive trainee, and individual marketing sales representative.[13]  The summary judgment record contains no evidence of substantial equivalence between these positions and the job offered to the Plaintiff.  Thus, a genuine issue of material fact exists regarding characterization of the job offered to Ms. Stanphill as the substantial equivalent of an account executive, account executive trainee, or sales representative for individual marketing.

C.   Job as an Account Consultant

The resulting issue is whether the job offered to Ms. Stanphill was the substantial equivalent of an "Account Consultant 2-50."  Ms. Stanphill presents evidence that would permit a reasonable finding of dissimilarities between the job offered to her and the account consultant position.   The differences involved processes, administrative issues, and compensation.

Processes and Administrative Issues

The actual job offered to Ms. Stanphill was called a "Small Group Account Executive II."[14]  The person who offered the job, Ms. Julie Sloan, testified that the "processes and

---

[13]   Final Pretrial Report at p. 5 ¶¶ 7 & 11 (July 14, 2008).

[14]   Julie Sloan Deposition at p. 8 (June 17, 2008).

administration issues" were "very, very different" between a Small Group Account Executive II and an Account Consultant 2-50.[15]  In the following exchange, Ms. Sloan elaborated:

> Q.    Then what you've explained is that the manner of performing the job for small group account executive II is substantially different from the account consultant position.  Is that correct?
>
> A.    In my opinion, the way that we do it now compared to what we did before, as far as systems and processes, they are all different.  Not all of them, but mostly different.
>
> Q.    Okay.  So the answer then would be yes, it is a different job involving different manners -
>
> A.    There are many differences.[16]

<u>Compensation</u>

The Plaintiff has also presented evidence regarding dissimilarities between the compensation for the "Account Consultant II" and "Small Group Account Executive II" position.  The evidence consists of testimony by Ms. Julie Sloan and Mr. Travis Johnson and data regarding the compensation paid to M.R.

For example, Ms. Sloan acknowledged in her deposition that the "compensation system" had been changed for the new position.[17]  And, she acknowledged that employees earned less in financial incentives when the job changed from an "Account Consultant 2-50" to a "Small Group Account Executive II:"

---

[15]    Julie Sloan Deposition at p. 9 (June 17, 2008).

[16]    Julie Sloan Deposition at p. 12 (June 17, 2008).

[17]    Julie Sloan Deposition at p. 14 (June 17, 2008).

Q.    The incentive that had applied to account consultants, back when Ms. Stanphill applied for those positions, changed when the position was remapped. Isn't that correct?

A.    That's correct.

Q.    Furthermore, the change was that the incentive went down, people earned less incentives under the restructured position than they had?

A.    That was what we understood it to be, yes.

Q.    And as a result, people who had been account consultants started earning less money after the mapping took place. Isn't that correct?

. . . .

THE WITNESS:    Some people did. I can't be for sure if everybody did, but yes.[18]

Later in the deposition, Ms. Sloan repeated her testimony that the incentive systems had gone "down for this position when the position was remapped."[19]

Travis Johnson also testified that "the new performance incentive" system had reduced earnings for account executives "probably around 20 percent."[20]

The Plaintiff illustrated the reduction in compensation by showing the earnings data for M.R., who had been an Account Consultant 2-50. In that position, the annual pay ranged

---

[18]    Julie Sloan Deposition at p. 16 (June 17, 2008).

[19]    Julie Sloan Deposition at p. 61 (June 17, 2008).

[20]    Travis Johnson Deposition at p. 58 (Nov. 15, 2007).

from $40,173.00 to $60,259.00.[21]  As a "Small Group Account Representative II," her annual pay ranged from $33,319.00 to $44,800.00.[22]

The fact-finder could reasonably conclude that the jobs as an Account Consultant 2-50 and Small Group Account Executive II were not substantially equivalent based on the evidence involving a reduction in pay.[23]

Summary

Based on the summary judgment evidence, the fact-finder could rationally conclude that the positions as an "Account Consultant 2-50" and a "Small Group Account Executive II" were not "substantially equivalent" in processes, administrative issues, or compensation.[24]

---

[21]    *See* HCSC Job Mapping Information - M.R.

[22]    *See* HCSC Job Mapping Information - M.R.

[23]    *See BPS Guard Services, Inc. v. International Union of United Plant Guard Workers of America, Local 228*, 45 F.3d 205, 210-11 (7th Cir. 1995) (upholding a finding that a job offered to the plaintiff was not "substantially equivalent" to the employee's former job in light of the lower rate of pay and lack of benefits); *Mathieu v. Gopher News Co.*, 273 F.3d 769, 784 (8th Cir. 2001) (upholding a finding that jobs offered to the plaintiff were not substantially equivalent to his former job because of differences in salary and benefits).

[24]    In a reply brief, the Defendant asserts that the job is "similar."  Defendant's Reply in Further Support of Its Supplemental Motion for Summary Judgment Regarding Alleged Damages Based upon Plaintiff's Rejection of Defendant's Offer of Employment at p. 2 (July 23, 2008).  But as discussed in the text, back-pay is terminated only if the jobs were "substantial equivalents" rather than "similar."  *See supra* pp. 3-4; *see also Floca v. Homcare Health Services, Inc.*, 845 F.2d 108, 111 (5th Cir. 1988) ("Two jobs are not 'substantially equivalent' merely because they offer similar salaries." (citation omitted)).

IV.     Reasonableness of the Plaintiff's Job Rejection

Even if the jobs were identical, summary judgment would be unavailable if a fact-finder could rationally infer objectively reasonable justification to decline the job offer. Such an influence would be permissible here.

On November 15, 2007, Mr. Travis Johnson testified that the "Account Consultant" position no longer existed.[25]   Roughly two months later, Ms. Julie Sloan wrote to Ms. Stanphill and offered her a position identified "as an Account Consultant in the 2 to 50 group."[26]   In the same letter, Ms. Sloan stated that Ms. Stanphill would report to Travis Johnson, who had already testified that the "Account Consultant" jobs no longer existed.[27] Ms. Sloan ultimately clarified that the actual job title was as a "Small Group Account Executive II" and that she had used the "Account Consultant" term only because it had been familiar to Ms. Stanphill.[28]

The resulting issue is whether the fact-finder could rationally conclude that an objective person could reasonably decline the offer based in part on suspicions about the initial description.  The Court answers in the affirmative.

---

[25]     *See* Travis Johnson Deposition at p. 33 (Nov. 15, 2007).

[26]     Letter from Julie Sloan to Carolyn Stanphill at p. 1 (Jan. 31, 2008).

[27]     *See supra* p. 9.

[28]     Letter from Julie Sloan to Carolyn Stanphill at p. 1 (Feb. 15, 2008).

From the evidence, the fact-finder could regard the existing environment as marked by distrust on the part of Ms. Stanphill. The Court may assume *arguendo* that the Defendant took reasonable steps to allay these concerns. Even with this assumption, the fact-finder could conclude from the evidence that an objectively reasonable person would have reacted negatively to an offer as an Account Consultant only a few months after Travis Johnson had testified that the position no longer existed and that the newly created position carried a roughly 20% reduction in pay.[29] The fact-finder could also conclude that the offeree's distrust would reasonably intensify when Ms. Sloan acknowledged the difference in job titles, but failed to disclose the change in pay or the difference in processes for the newly created position.[30]

In light of the omissions in the job offer, the fact-finder could rationally conclude that Ms. Stanphill had acted reasonably in her decision to decline the offer as a Small Group Account Executive II.

V.     Summary

In summary, genuine issues of material fact exist concerning:

- substantial equivalence of the jobs sought by Ms. Stanphill and the position offered to her and

- reasonableness of the decision to decline the Defendant's job offer.

---

[29]     *See supra* pp. 7, 9.

[30]     Julie Sloan Deposition at pp. 14, 17 (June 17, 2008).

Accordingly, the Court overrules the Defendant's supplemental motion for summary judgment.

So ordered this 22nd day of August, 2008.

Robert E. Bacharach
United States Magistrate Judge